# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| KRISTY MATHENA,<br><br>      Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | No. 17-CV-52-CJW<br><br>**MEMORANDUM ORDER<br>AND OPINION** |

Claimant, Kristy Mathena ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34 (Act). Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the reasons that follow, the ALJ's decision is hereby **reversed and remanded for further proceedings consistent with this Order**.

## I. BACKGROUND

The Court adopts the facts as set forth in the parties' Joint Stipulation of Facts (Doc. 18) and, therefore, will summarize only the pertinent facts. Claimant was born in 1978, was 32 years old when she allegedly became disabled, and was 37 at the time of the ALJ's decision. (AR 34, 36).[1] Claimant has a high school diploma and has past work as a meat wrapper, shelving stocker, poultry boner, fast food worker, and data

---

[1] "AR" refers to the administrative record below.

entry clerk. (AR 34, 55, 101, 711). The ALJ found that claimant's past relevant work was unskilled and that transferability of job skills was, therefore, not an issue. (AR 34).

On August 3, 2012, claimant applied for disability insurance benefits and supplemental security income alleging a disability onset date of October 1, 2010. (AR 20). In 2013, the Commissioner denied claimant's application initially and on reconsideration. (AR 239, 249). On January 28, 2015, ALJ Tela Gatewood held a hearing at which defendant and a vocational expert testified. (AR 50). On November 23, 2015, ALJ Timothy G. Stueve held a supplemental hearing at which defendant and a vocational expert testified. (AR 20, 83). On January 22, 2016, ALJ Stueve found claimant was not disabled. (AR 20-36). Claimant filed a request for review by the Appeals Council, submitting additional evidence. (AR 2, 6, 1463-78). On March 10, 2017, the Appeals Council denied claimant's request for review. (AR 1-6).

On May 16, 2017, claimant filed her complaint in this Court. (Doc. 4). By March 20, 2018, the parties had submitted their briefs and the Court deemed this case fully submitted and ready for decision. (Doc. 28). Claimant and the Commissioner both consented to proceedings before a United States Magistrate Judge, including final disposition of the case, and the Honorable Linda R. Reade, United States District Judge, reassigned this case to the Honorable Kelly Mahoney. (Doc. 16). On May 7, 2018, this case was reassigned to the undersigned.

## II.     *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can

4

make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step of the analysis:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date of her disability. (AR 22).

At Step Two, the ALJ found that claimant had the severe impairments of "mild osteoarthritis of ankles and feet bilaterally; pes planus and subluxation of toes 2-4 bilaterally; fibromyalgia; cervical degenerative disc disease with slight disc herniation; early patellofemoral chrondromalacia; obesity; depression; personality disorder; anxiety/posttraumatic stress disorder (PTSD); borderline intellectual functioning; and substance addiction disorder." (AR 23).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the relevant regulations. (*Id.*).

At Step Four, the ALJ found claimant had the residual functional capacity to perform light work with the following limitations:

> [claimant] can occasionally climb ramps and stairs, as well as occasionally climb ladders, ropes and scaffolds. She is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She is able to understand, carry out, and remember simple, routine, and repetitive tasks[,] involving only simple, work-related decisions[,] with few, if any workplace changes. She can perform no fast-moving assembly line-type work. She is limited to work requiring no interaction with the public. She can be around coworkers throughout the day, but only with brief incidental interaction with coworkers and no tandem job tasks.

(AR 26-34). Also at Step Four, the ALJ found that claimant could perform past relevant work as a meat wrapper and shelving stocker. (AR 34-35). Therefore, the ALJ found that claimant was not disabled. (*See* AR 34).

The ALJ continued on to Step Five, however, and determined that, in the alternative, there were other jobs that existed in significant numbers in the national economy that claimant could perform, including maid/housekeeper, collator operator, and folder. (AR 34-35).

## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and

give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the Commissioner made three primary errors in assessing claimant's application for benefits: 1) the ALJ erred at Step Three in determining that claimant's impairments did not meet or medically equal a Listing for intellectual disability; 2) that the ALJ erred at Step Four in evaluating the opinions of several physicians; and 3) that the Commissioner erred in failing to consider additional evidence

at Step Four that was submitted to the Appeals Council and that where the Appeals Council did consider additional evidence, it did so improperly. (Doc. 19). For the reasons explained below, the Court finds that the ALJ erred at Step Three and finds remand appropriate. Therefore, the Court will not address claimant's additional allegations of error at Step Four. The questions before the Court in regard to Step Three are whether substantial evidence supports the ALJ's conclusion that claimant lacked adaptive deficits and, if there were such deficits, whether they manifested themselves prior to age twenty-two. The Court will address each question in turn.

### A. *Claimant's Intellectual Impairments*

Claimant argues that the ALJ erred in determining that claimant's impairments did not meet or medically equal a Listing for intellectual disability, specifically Listing 12.05. (Doc. 19, at 6-17). The introductory paragraph of Listing 12.05 "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404, Subpt. P, § 12.05. In addition to this requirement, the claimant must show that the required level of severity is met by demonstrating that any one of the following conditions exists:

    A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR
    B. A valid verbal, performance, or full scale IQ of 59 or less;
OR
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
        1. Marked restrictions of activities of daily living; or,

> 2. Marked difficulties in maintaining social functioning; or,
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or,
> 4. Repeated episodes of decompensation, each of extended duration.

*Id.* § 12.05(A)-(D).

In this case, when claimant was thirty-seven years old, a licensed psychologist administered an IQ test and found that claimant had a full scale IQ of 57, with a verbal score of 66, a perceptual reasoning score of 65, and a processing speed score of 50. (AR 1293). The ALJ acknowledged this fact and accepted the test's validity. (AR 25). In discussing Listing 12.05, the ALJ accepted that claimant's intelligence quotient (IQ) fell within the "50's or 60's" ranges prescribed by subsections 12.05(B) and (C). (AR 25). The ALJ considered whether claimant met the criteria of 12.05(D) and concluded she did not because there was a lack of marked restrictions in claimant's daily living activities, social functioning, and concentration, persistence and pace, and that claimant had not experienced any episodes of decompensation of extended duration. (AR 24). The ALJ further found that claimant was lacking the adaptive functioning deficits required by the introductory paragraph of Listing 12.05. (AR 25-26).

There is some ambiguity surrounding the question of what is necessary for a claimant to demonstrate deficits in adaptive functioning. Social Security Regulations do not define what is meant by "deficits in adaptive functioning." Instead, the Regulations provide that the definition of mental retardation—the predecessor term to "intellectual disability" described in Listing 12.05—"is consistent with, if not identical to, the definitions of [intellectual disability] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, 20022 (Apr. 24, 2002). ALJs are allowed to use the definition endorsed by any of the professional organizations, but are not required to do so. (*See id.*). Other

courts, in evaluating deficits in adaptive functioning, have found that the term "deficits in adaptive functioning" refers to an individual's "ability to cope with those challenges of ordinary everyday life." *See Talavera v. Astrue*, 697 F.3d 145, 148 (2nd Cir. 2012) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)), *see also Perryman v. Colvin*, Civil No. 12-247(MJD/JSM), 2013 WL 4435385, at *20 (D. Minn. Aug. 16, 2013). The Eighth Circuit Court of Appeals considers factors such as a claimant's ability to perform activities of daily living, as well as the claimant's communication skills, social relationships, and limitations in concentration, persistence, or pace. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). As discussed below, neither the Regulations nor the Eighth Circuit Court of Appeals require marked or significant deficits in adaptive functioning to satisfy the introductory paragraph to Listing 12.05; rather, they require only a showing of *some* deficit.

In this case, the ALJ found that claimant possessed mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (AR 24). Listing 12.05(B) requires an IQ of 59 or lower with no other accompanying impairments. The Regulations apply no such severity requirements to the impairments required by the introductory paragraph, however. Neither party disputes the fact that claimant suffers from *some* adaptive deficits. Mild and moderate deficits in adaptive functioning are sufficient to satisfy Listing 12.05(C). *Mahnke v. Berryhill*, No. 1:16-CV-00060-LRR, 2017 WL 9440385, at * 6 (N.D. Iowa June 6, 2017) ("A claimant need not suffer from any marked or extreme limitations to satisfy Listing 12.05(C).") (citation omitted). *See also Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997) ("The issue is not whether the claimant can perform gainful activity; rather, it is whether he has a physical impairment, other than his conceded mental impairment, which provides significant work-related limited

function—in other words, whether the second prong of § 12.05(C) is met."). Thus, the question the ALJ sought to answer was whether the deficits displayed by the claimant were commensurate with the claimant's full scale IQ of 57. (AR 25).

As discussed above, the introductory paragraph of Listing 12.05 states that, in addition to onset of impairment prior to age twenty-two, a claimant must exhibit deficits in adaptive functioning. 20 C.F.R Pt. 404, Subpt. P, § 12.05. The Regulation goes on to state that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id*. Paragraph B requires "[a] valid verbal, performance, or full scale IQ of 59 or less[.]" *Id*. Paragraph B imposes no further restrictions or qualifications on the severity or type of deficits. Given that there are no functioning requirements for Paragraph B, an implicit requirement of mild or moderate deficits contained in paragraph C, as discussed *supra*, and the explicit requirement of marked deficits required by paragraph D, it would be reasonable to read the paragraphs as representing a graduated scale of impairment. In other words, as a claimant's IQ rises, the severity of the required deficits also rise.

The ALJ's assessment rests heavily on his determination that claimant is not impaired *enough* to be considered disabled. The ALJ found that the record "clearly show[ed]" that claimant lacked the adaptive deficits required for a finding of intellectual disability as required by the opening paragraph of Listing 12.05. (AR 25). In reaching this conclusion, the ALJ described claimant's activities of daily living, claimant's social abilities, and claimant's work history. (AR 25-26). Specifically, the ALJ cited claimant's capacity to live alone with claimant's child, as well as the fact that claimant

> Can prepare meals, clean her home, shop, take the bus, attend religious services, socialize, watch television, and listen to the radio. She can write and read magazines. add and subtract, as well as multiply and divide small numbers. She can use a smart phone, sending test messages to friends and family. She can make financial decisions on behalf of her

> disabled child as her representative payee. The claimant reported previously receiving certified nurse's aid certification.

(AR 25).

A claimant's ability to perform basic activities of daily living does not show that the claimant is not intellectually disabled. *Lott v. Colvin*, 772 F.3d 546, 551 (8th Cir. 2014). In *Lott*, the Eighth Circuit Court of Appeals agreed with claimant's argument that "ALJs will nearly always be able to point to the performance of rudimentary activities of daily living—even though such activities do not, in fact, show that a person is not [intellectually disabled]", thus "mak[ing] it practically impossible for non-institutionalized [intellectually disabled] claimants to meet listing 12.05(C) . . . ." (*Id.*). The Court further cited the American Psychological Association's Diagnostic and Statistical Manual, which states that people with intellectual disabilities "usually achieve social and vocational skills adequate for minimum self-support." (*Id.* at n.4) (citing DSM-IV-TR 43). The Court ultimately held that despite Lott's work history as a construction worker and short order cook, his ability to drive, his ability to carry out basic daily functions did not preclude him from meeting Listing 12.05.

Rather than enumerating a list of what activities a claimant should be able to do at a given IQ level, the SSA considers the "extent to which [a claimant's] impairment(s) interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R § 404.1520(a). Thus, a claimant in one case may not be precluded from Listing 12.05 when a claimant in another case with similar abilities may be precluded.

In the instant case, the ALJ listed a number of activities to support the conclusion that claimant is not intellectually disabled, but failed to address the quality or adequacy of the claimant's performance of these activities. These are important details which are relevant to a fair assessment of the record. The claimant was able to prepare meals, but

12

these meals generally consisted of simple or pre-prepared meals such as hot pockets, cereal, rotisserie chickens, frozen meals, and soup. (AR 491, 723). Claimant reported performing light housework such as dishes or laundry (AR 491), but receives significant support from social services in the upkeep of her home. (AR 1147). Claimant points out that claimant also received considerable assistance from social services in preparing meals, cleaning, shopping, and personal care skills. (Doc. 19, at 11-12 (citing AR 65-66, 71-72, 89-90, 99-100, 562-63, 599, 601, 617, 620, & 1147)). The only reference the ALJ made to considering all this assistance is a passing reference that assistance claimant received from social services for child care is "due to claimant's daughter's disability." (AR 25). This implies that the ALJ believed such assistance from social services was only necessary because of the child's disability and not because of claimant's limitations. That is inconsistent with the record already cited. See also AR 1295 (Dr. Mraz found claimant did not perform in an age-appropriate manner in home living skills and was "unable to manage the household chores *and* take care of her daughter without a great deal of community support.") (emphasis added). The claimant attends religious services, but does not do so regularly and reports feeling alienated at services, details which were not considered by the ALJ. Claimant watches television and listens to the radio, activities which are not at all inconsistent with Listing 12.05. *Bailey v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000) (finding that watching television and visiting with friends not inconsistent with Listing 12.05).

Further, the ALJ's assessment of claimant's other activities contain multiple inconsistencies. When describing claimant's social functioning, the ALJ stated that claimant "alleges no difficulty getting along with others in the workplace in the past" (AR 24), despite the fact that claimant was fired from at least six positions in the past for altercations with managers and coworkers. (AR 57-63). Claimant's repeated inability to get along with others is in itself an adaptive deficit. *See Maresh v. Barnhart*, 438 F.3d

897, 900 (8th Cir. 2006) (holding that claimant exhibited a deficit in adaptive function by having frequent fights with peers). The ALJ asserted that claimant can leave her home with no difficulty (AR 24), despite claimant reporting that she leaves the house only once every few days. (AR 494). In a description of claimant's activities of daily living, the ALJ stated that claimant can perform personal care with no difficulty and "even report[s] motivation to fix her hair." (AR 24). This reported motivation could be found nowhere in the record and is in fact contradicted by the record numerous times. (AR 592, 598, 622).

It is true that the record does support some aspects of the ALJ's decision regarding claimant's adaptive skills. Claimant's ability to manage money is "minimally acceptable." (AR 893). The ALJ also relied on claimant receiving certification as a certified nurse's assistant (CNA). (AR 25). A history of work in skilled or semi-skilled positions may indicate that a claimant does not possess adaptive deficits. *See Ash v. Colvin*, 812 F.3d 686, 691-93 (8th Cir. 2016). *See also Cox v. Colvin*, 495 F.3d 614, 619 (8th Cir. 2007) (finding the fact that claimant worked as a CNA for two years weighed heavily against a finding of intellectual disability). The evidentiary value of claimant's certification here, however, is tempered by the possibility that claimant lost her job as a CNA due to an inability to do the work. (AR 61). *See Perryman*, 2013 WL 4435385, at *21 (finding claimant who worked as CNA for eight years prior to onset of disability could not meet Listing 12.05 without evidence in record indicating loss of job due to lack of adaptive functioning). In the instant case, there is evidence that claimant worked as a CNA for only 90 days and may have lost her CNA position due to a deficit in adaptive functioning, namely, being late or not keeping up with the job. (AR 60-61, 96). The ALJ did not address this evidence. The rest of claimant's employment history involved unskilled labor in industry, a check-cashing business, shelving books in a library, and in the restaurant sector. (AR 58-62; 90-95).

On the other hand, other evidence in the record is consistent with the presence of deficits in adaptive functioning. Claimant worked only in unskilled or menial jobs. (AR 57-63). Claimant lost multiple jobs due to inability to get along with coworkers or an inability to learn the required tasks. (*Id.*). Claimant can read only at a second-grade level. (AR 1294). Moreover, claimant had GAF scores consistently in the 40's and 50's (AR 793, 796, 800, 80-6, 809, 812, 823, 824, 841, 837, 839, 840, 877, 1276, 1282, 1285-86), which may be some indication of "serious impairment in social, occupational, or school functioning." DSM-IV, at 34. The ALJ, however, did not address claimant's GAF scores in relation to Step Three.[2]

A reviewing court should consider evidence that both supports and detracts from the ALJ's decision, although it should not overturn that decision simply because some evidence may support the opposite conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). In the instant case, the Court find remand necessary. There are inconsistencies between the ALJ's decision and the record, and the ALJ failed to address evidence supporting the presence of deficits in adaptive functioning. The Court is unable to determine if the ALJ's decision was supported by substantial evidence absent the ALJ addressing these matters. *Lott*, 772 F.3d at 551. Thus, the Court finds that remand is appropriate to allow the ALJ to address these issues and provide a more thorough explanation of the basis for his decision.

### B. *Impairment Manifested Prior to Age Twenty-Two*

The second question to be addressed is whether the claimant's impairments manifested before the age of twenty-two. The ALJ expressed doubts that claimant's impairments were manifested prior to age twenty-two. (AR 25-26). Claimant contends that the ALJ's doubts as to whether claimant's impairments manifested themselves prior

---

[2] The only reference to a GAF score in the ALJ's decision is in relation to the Step Four analysis, and notes a GAF score of 45.

to age twenty-two is based on the ALJ having misconstrued the evidence. (Doc. 19, at 10).

The introductory paragraph of Section 12.05 requires the intellectual impairment to have manifested prior to age twenty-two, but does not specify what evidence may be used to demonstrate such a manifestation. Nor does the introductory paragraph require a formal diagnosis of intellectual disability to demonstrate such a manifestation. *Maresh*, 438 F.3d at 899. Claimant in this case presents nearly identical evidence as that found in *Maresh*.

The claimant in *Maresh* was placed in special education classes as a youth and had difficulty with reading, writing, and mathematics. *Id.* at 900. At age thirty-seven, he was found to have an IQ of 70. *Id.* The Eighth Circuit Court of Appeals found that this adult IQ score represented sufficient evidence of claimant's IQ as a youth, reasoning that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Id.* (citation and internal quotation marks omitted). The Eighth Circuit also cited Social Security Regulations, which "permit [the court] to use judgment, based on *current evidence*, to infer when the impairment began." *Maresh*, 438 F.3d at 900 (citing 65 Fed. Reg. 50746-01, 50753 (2000)) (emphasis in original). The claimant in *Maresh* also exhibited difficulty getting along with others, which the Eighth Circuit characterized as a deficit in adaptive functioning. *Id.* The Eighth Circuit, considering these factors together, concluded that the ALJ should have found that the claimant's impairment manifested itself during his developmental period. *Id.*

In the instant case, claimant was identified as having special education needs as a youth. (AR 714). Claimant reported being enrolled in special education classes and receiving disability benefits as a child for "[b]ehavioral and mental disabilities." (AR 68). As noted, when tested at age 37, claimant was found to have a full scale IQ of 57,

with a verbal score of 66, a perceptual reasoning score of 65, and a processing speed score of 50. (AR 1293). The same series of tests revealed that claimant was assessed as reading at a second grade level. (AR 1294). Absent other evidence, the claimant's IQ is presumed to remain stable, indicating that claimant possessed a low IQ prior to age twenty-two. *Maresh*, 438 F.3d at 900.

The ALJ either ignored or discounted this evidence in his assessment. (AR 25-26). The ALJ concluded there was no evidence claimant received special education, as she claimed in her testimony. (AR 25-26). The ALJ reasoned, however, that the question was moot in light of the fact that, regardless of her IQ or education, claimant's functioning demonstrates that she was not disabled. (AR 26). The ALJ was mistaken, however, as records from the Chicago Public Schools reflect that claimant did receive special education. (AR 714). In its brief to this Court, the Commissioner failed to address this factual error. On remand, if the ALJ concludes that claimant does have deficits in adaptive functioning, the ALJ is directed to consider whether those deficits manifested prior to age twenty-two.

## VI. CONCLUSION

As noted, claimant asserted other grounds of error. Because the Court has found remand appropriate, however, the Court will not address these additional grounds at this time.

For the aforementioned reasons, the ALJ's decision is hereby **remanded for further proceedings consistent with this opinion**.

**IT IS SO ORDERED** this 23rd day of August, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa